**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JONATHAN CUNEY,

                                        Plaintiff,                        1:22-cv-154 (BKS/CFH)

v.

YOUNG CHOI, BATFE, JASON SHERMAN, BATFE,
ROBERT SOUKERAS, BATFE, JOHN/JANE DOE #1
THROUGH #5, and FEDERAL BUREAU OF
ALCOHOL, TOBACCO, FIREARMS, AND
EXPLOSIVES,

                                        Defendants.

---

**Appearances:**

*Plaintiff pro se:*
Jonathan Cuney
71306-054
Lewisburg U.S. Penitentiary
P.O. Box 2000
Lewisburg, Pennsylvania 17837

*For Defendants:*
Carla B. Freedman
United States Attorney
Emer M. Stack
Assistant United States Attorney
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff pro se Jonathan Cuney, a federally incarcerated inmate, commenced this action

pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Wire

and Electronic Communications Interception and Interception of Oral Communications Act (the "Wiretap Act"), 18 U.S.C. §§ 2510–22, against Defendant Young Choi. (Dkt. No. 40). On November 7, 2022, the Court granted Defendant's motion to dismiss Plaintiff's first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. *Cuney v. Choi*, No. 22-cv-154, 2022 WL 16743984, at *6, 2022 U.S. Dist. LEXIS 201968, at *15 (N.D.N.Y. Nov. 7, 2022). The Court granted Plaintiff leave to amend. *Id.*, 2022 WL 16743984, at *6, 2022 U.S. Dist. LEXIS 201968, at *14–15.

On December 5, 2022, Plaintiff filed the operative second amended complaint. (Dkt. No. 52.) Plaintiff now brings claims for "invasion of privacy – intrusion on seclusion or solitude," "invasion of privacy – public disclosure of private facts," and intentional infliction of emotional distress under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., against Defendant Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE"); violation of the Privacy Act, 5 U.S.C. § 552a, against Defendant BATFE; violation of the Wiretap Act against Defendants Choi, Jason Sherman, and Robert Soukeras; and violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq., against Defendants Choi, Sherman, and Soukeras. (Dkt. No. 52.)[1]

Presently before the Court is Defendants' motion to dismiss the second amended complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. (Dkt. No. 89.) The motion is fully briefed. (Dkt. Nos. 102, 106.) For the following reasons, Defendants' motion to dismiss is granted.

---

[1] To the extent Plaintiff continues to assert a *Bivens* claim based on the alleged "unlawful search and seizure of plaintiff's private electronic and stored communications," (Dkt. No. 52, ¶ 15) that claim was dismissed in the Court's prior decision, and the Court does not consider it again here. *See Cuney*, 2022 WL 16743984, at *3–5, 2022 U.S. Dist. LEXIS 201968, at *7–12.

II.    FACTS[2]

Plaintiff was arrested in November 2019 for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g). (Dkt. No. 52, ¶ 5). Plaintiff alleges that during the investigation, "defendant(s) . . . appl[ied] for and execute[d] multiple warrants," including warrants for "1) electronic communication; 2) Stored communications; 3) location; 4) GPS; 5) financial; 6) pen register; 7) trap trace; and 8) search." (*Id.* ¶ 6.) "These warrants were authorized to investigate alleged firearms trafficking offenses and involved the interception and viewing of electronic communications and stored communications." (*Id.* ¶ 7.) The "warrants were executed by the defendant(s) and the information obtained therein was reviewed by Defendant(s)." (*Id.* ¶ 8.) "The defendant(s) also caused warrants to be issued in other jurisdictions," including "Rhode Island, Missouri, Wyoming, California, and elsewhere." (*Id.* ¶ 9.) "The fruit of these warrants was also reviewed by the defendant(s)." (*Id.*) "During the execution of these warrants, the defendants reviewed, obtained, compiled, and searched[] multiple electronic communications, stored communications, other private communications, financial information, location information, photographs, videos, personal and private information, and other records which involved the plaintiff," including information "from Verizon, YAHOO!, and others." (*Id.* ¶¶ 10, 94.) "[A]t all times relevant," BATFE possessed "records that refer to the plaintiff by unique identifying numbers, symbols, and by name" and include "individual identifier[s] such as[] case numbers unique to the plaintiff, the name Jonathan Cuney, Jonathan M. Cuney, Secret Squirrel, Secret Squirrel - Redux, and others." (*Id.* ¶ 68.)

---

[2] The facts are drawn from the second amended complaint and exhibits attached thereto. (Dkt. No. 52.) The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's recitation of facts is limited to those facts relevant to the disposition of Defendants' motion to dismiss.

Plaintiff alleges that "[p]rivate, personal, sexual, and embarrassing communications" from Defendants' review "had no nexus to the scope of the warrants" and that the "defendant(s) exceeded the authorization of their access and the limited firearms scope of the warrants by collecting, compiling, and sharing amongst each other and publicly, the irrelevant private details of the plaintiff[']s personal, private, sexual life and family life." (*Id.* ¶¶ 11–12.) "The repeated unlawful disclosure of the private concerns of the plaintiff[] include[ed] embarrassing situations, personal family situations, and sexual natured content by the defendant(s)[] without a lawful warrant to collect that information, nor lawful reason to disclose that information." (*Id.* ¶ 27.) "A majority of the communications . . . that w[ere] disclosed w[ere] transmitted from [Plaintiff's] cellular phone[,] . . . tablet, or . . . personal computer," while "[o]ther . . . information was held on stored communications including online stored digital photographs; emails; online stored videos; online financial transactions, call logs, internet histories, data backup, etc." (*Id.* at 21.)

Plaintiff alleges that the first disclosure of information occurred around November 12, 2019, "in the course of executing a search warrant subsequent to" Plaintiff's arrest when "defendant(s) did intentionally make unlawful disclosures" to "HT"—the mother of Plaintiff's two minor children. (*Id.* ¶ 19; *see also id.* at 21.) Plaintiff alleges that while HT was being detained during the execution of a search warrant at her residence, "defendant(s)" disclosed to HT that Plaintiff "was cheating on her with multiple women and had gotten one of these women pregnant." (*Id.* ¶ 20.)

Plaintiff alleges that the second disclosure of information occurred around November 13, 2019, when "defendant(s) made similar disclosures" of Plaintiff's "private information over the telephone to another of plaintiff[']s girlfriends, Ms. AHT of Willits, California," who was, at the time, five-months pregnant with Plaintiff's child. (*Id.* ¶ 22; *see also id.* at 22.)

Plaintiff alleges that the third disclosure of information also took place around November 13, 2019, when "defendant(s) made contact via telephone with Ms. MM of Columbia, Missouri" and "made further unlawful disclosures of the plaintiff[']s private information to her." (*Id.* ¶ 24; *see also id.* at 22.)

Plaintiff alleges that the fourth disclosure of information took place between November 18, 2019, and February 2020 when "defendant(s) made disclosures of the plaintiff[']s private information to Ms. JN of Cobleskill, New York via telephone and in person." (*Id.* ¶ 25; *see also id.* at 22.)[3]

Plaintiff alleges that the fifth disclosure of information also took place between November 18, 2019, and February 2020 when, after "JN declined to speak with the defendant(s), the defendant(s) made contact with Ms. JN's father and AGAIN disclosed plaintiff[']s private information in an attempt to coerce JN's father to apply pressure on his daughter to cooperate with the investigation." (*Id.* ¶ 26; *see also id.* at 22.)

Issues related to these disclosures "were never addressed" by a suppression motion made by Plaintiff's counsel during his criminal proceedings. (*Id.* ¶ 28.) "These issues . . . are being raised on appeal, collateral attack, by Civil Suit, and by complaints lodged with the B.A.T.F.E. Office of Professional Responsibility, D.O.J.'s Office of Professional Responsibility, D.O.J.'s Civil Rights Division, and the Federal Communications Commission." (*Id.* ¶ 29.)[4]

Defendant Choi "mock[ed] the plaintiff at his arraignment over the damage these disclosures caused." (*Id.* ¶ 18.)

---

[3] Plaintiff clarifies that JN informed Plaintiff that Defendant Choi made the disclosures. (*Id.* at 22.)

[4] Plaintiff attaches to the second amended complaint a document titled "complaint of misconduct," (Dkt. No. 52, at 17–19), dated November 29, 2022—more than nine months after Plaintiff filed his original complaint and six days before Plaintiff filed his second amended complaint—which Plaintiff describes as in the second amended complaint as a "DOJ/BATFE Complaint" but which is not addressed to any party.

### III.    STANDARD OF REVIEW

#### A.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff's failure to exhaust administrative remedies under the FTCA deprives the federal court of jurisdiction to hear the claims. *See Grant v. United States*, 317 F. Supp. 3d 850, 856 n.4 (S.D.N.Y. 2018), *report and recommendation adopted* 2018 WL 3574865, 2018 U.S. Dist. LEXIS 124603 (S.D.N.Y. July 25, 2018).

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)). "In that case, the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113).

#### B.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers*, 282 F.3d at 153 (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel.*

*Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). Mere "labels and conclusions" are insufficient to state a

claim; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555. A court must accept as true all factual

allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC*

*v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,

493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A pro se plaintiff's complaint "must be construed liberally with 'special solicitude' and

interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515

(2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

## IV.   DISCUSSION[5]

### A.   Federal Tort Claims Act Claims

Defendants move to dismiss Plaintiff's FTCA claims against BATFE on the grounds

that BATFE is not a proper party to be sued under the FTCA; Plaintiff has not exhausted

administrative remedies with respect to his FTCA claims; Plaintiff's FTCA claims are time

barred; and Plaintiff's FTCA claims are not cognizable under the FTCA because Plaintiff fails to

state a claim under New York law. (Dkt. No. 89-1, at 8–14.) Plaintiff concedes that he "made an

error" in naming the party against whom he brought his FTCA claims but argues that he should

be allowed to correct it and that the United States, as the proper party to be sued, was on notice

---

[5] Defendants argue that Plaintiff's second amended complaint is improper because it "went beyond the scope of th[e] limited amendment contemplated by" the Court's prior decision. (Dkt. No. 89-1, at 3–4.) Defendants are correct that the Court premised its discussion of Plaintiff's request for leave to amend on Plaintiff's assertion that Defendant Choi could be liable under the SCA. *See Cuney*, 2022 WL 16743984, at *6, 2022 U.S. Dist. LEXIS 201968, at *14. But the Court indicated that it "will allow Plaintiff an opportunity to file a second amended complaint" without reference to any specific limitation as to claims Plaintiff could amend or parties against whom Plaintiff could bring such claims. *See id.* Therefore, Plaintiff did not "exceed[] the parameters of the leave that was given," *see Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order), and the Court will not dismiss Plaintiff's claims on this ground.

of his claims. (Dkt. No. 102, at 3.) Plaintiff further argues that his FTCA claims are timely because equitable tolling is warranted and because Plaintiff is being continuously wronged; the laws of states other than New York are applicable to Plaintiff's FTCA claims; and the Government has been put on notice of Plaintiff's intent to file suit. (*Id.* at 3–5.)

Defendants are correct that BATFE is not a proper defendant for an FTCA claim. Under the FTCA, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "The FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself." *C.P. Chem. Co., Inc. v. United States*, 810 F.2d 34, 37 n.1 (2d Cir. 1987); *accord* 28 U.S.C. § 2679(a). Accordingly, the United States, not BATFE, is the proper party.

But even liberally construing Plaintiff's FTCA claims against BATFE as claims against the United States, the claims must still be dismissed for lack of subject-matter jurisdiction. Under the FTCA "[a]n action shall not be instituted upon a claim against the United States for money damages for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant . . . first presented the claim to the appropriate Federal agency and [the] claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).[6] That is, "[t]he FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." *Celestine v. Mount Vernon Neighborhood*

---

[6] "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim . . . ." *Id.*

*Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). "This requirement is jurisdictional and cannot be waived." *Id.*

"[B]ecause the FTCA constitutes a waiver of sovereign immunity, the procedures set forth in [it] must be adhered to strictly." *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983). "The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] requirements," and "[i]n the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). The "procedural hurdle [of demonstrating exhaustion under the FTCA] applies equally to litigants with counsel and to those proceeding *pro se*." *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Here, Plaintiff's only allegation with respect to exhaustion is that "issues" related to alleged disclosures "are being raised on appeal, collateral attack, by Civil Suit, and by complaints lodged with the B.A.T.F.E. Office of Professional Responsibility, D.O.J.'s Office of Professional Responsibility, D.O.J.'s Civil Rights Division, and the Federal Communications Commission." (Dkt. No. 52, ¶ 29.) Plaintiff does not allege that he has already "presented the claims to" BATFE and that BATFE "finally denied" the claims "before [Plaintiff] commenc[ed] [the] action," as required by the FTCA. *See* 28 U.S.C. § 2675(a). While Plaintiff attaches to his second amended complaint a document he titled "complaint of misconduct," that document is not addressed to BATFE (or any other agency) and, in any case, is dated November 29, 2022—more than nine months after Plaintiff filed his original complaint and only six days before Plaintiff filed his second amended complaint. (Dkt. No. 52, at 17–19); *see also McNeil*, 508 U.S. at 111 ("[When the petitioner filed his complaint in federal court,] petitioner had neither presented his claim to the [federal agency], nor had his claim been 'finally denied' by that agency. As the

Court of Appeals held, petitioner's complaint was filed too early."); *Manchanda v. Lewis*, No. 21-1088, 2021 WL 5986877, at *5 n.3, 2021 U.S. App. LEXIS 37362, at *12 n.3 (2d Cir. Dec. 17, 2021) (summary order) (noting that unexhausted FTCA claims should be dismissed "even where those claims would be ripe if re-filed at a later date"). And to the extent Plaintiff presented this document to BATFE, Plaintiff does not allege that BATFE has finally denied it, either in writing or by failure to respond.

Furthermore, even if this was a claim presented to BATFE, Plaintiff's general request for "an investigation," (Dkt. No. 52, at 19), does not appear to satisfy the FTCA's "presentment requirement for exhaustion purposes," which requires that a claim presented to a federal agency pursuant to the FTCA "set forth a specific demand for damages in a sum certain." *See Manchanda*, 2021 WL 5986877, at *3–4, 2021 U.S. App. LEXIS 37362, at *8–10; *see also* 28 C.F.R. § 14.2(a) ("For purposes of [§ 2675], a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . ."). Rather, Plaintiff's "complaint for misconduct" is "most generously characterized as a general complaint and request for someone in the federal government to do something about the allegations made," which is insufficient to satisfy the FTCA's exhaustion requirement. *Manchanda*, 2021 WL 5986877, at *4, 2021 U.S. App. LEXIS 37362, at *10.

In his response to Defendants' motion to dismiss, Plaintiff argues that he has timely "filed a Standard Form 95 to the Federal Government putting the government on notice he intended to file suit" and that "[p]revious notice was filed with both the United States Department of Justice and the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives . . . in 2021 and have been routinely filed with different offices since." (Dkt. No. 102, 5.) The Court,

in deciding a Rule 12(b)(1) motion, "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *See APWU*, 343 F.3d at 627 (quoting *LeBlanc*, 198 F.3d at 356), But Plaintiff, who bears the burden of proving the existence of subject-matter jurisdiction generally, *see Tandon*, 752 F.3d at 243, and compliance with the FTCA's exhaustion requirements specifically, *see Agent Orange*, 818 F.2d at 214, provides no factual basis on which the Court could conclude that he sufficiently presented his FTCA claims to BATFE or any other agency in satisfaction of the requirements of the FTCA—the only factual support provided by Plaintiff in this respect is his untimely "complaint of misconduct," (Dkt. No. 52, at 17–19). Defendants, meanwhile, have submitted a declaration from Katherine Bolton, Associate Chief Counsel, Litigation Division, Office of Chief Counsel of BATFE, in which she indicates that, after a search of BATFE's case management databases that contain administrative tort claims received by BATFE, she "found no record of an administrative tort claim presented by or on behalf of Jonathan Cuney at any time." (Dkt. No. 89-2, ¶ 8).

Thus, the Court concludes that Plaintiff did not present his claims to BATFE (and therefore, necessarily, Plaintiff's administrative claims have not been denied). *See Pudney v. Otselic Valley Fam. Health, N.P., P.C.*, No. 04-cv-760, 2004 WL 2634305, at *3, 2004 U.S. Dist. LEXIS 23341, at *9 (N.D.N.Y. Nov. 3, 2004) ("There is undisputed proof in the record, in the form of [a] declaration [submitted by the defendant], that plaintiff did not 'present' an administrative tort claim pertaining to the allegations which are the subject of this . . . action."); *Haber v. United States*, No. 10-cv-5443, 2012 WL 92499, at *3, 2012 U.S. Dist. LEXIS 3350, at *8–9 (E.D.N.Y. Jan. 10, 2012) (dismissing FTCA claims where the defendant submitted an unrebutted declaration demonstrating the plaintiff's failure to exhaust). Therefore, Plaintiff has

failed to exhaust administrative remedies as required by the FTCA. Accordingly, Plaintiff's

FTCA claims are dismissed without prejudice.[7]

### B.     Privacy Act Claim

Defendants move to dismiss Plaintiff's Privacy Act claim against Defendant BATFE on

the grounds that Plaintiff has not plausibly alleged that the disclosed information at issue

constitutes records contained in a system of records as contemplated by the Privacy Act; that any

disclosure was willful or intentional; or that Plaintiff suffered any actual damages from the

purported disclosures. (Dkt. No. 89-1, at 14–16.) Defendants also argue that "disclosure of an

item seized during the execution of a search warrant [does not] constitute a violation of the

Privacy Act." (*Id.* at 16 (quoting *In re Search of 2122 21st Rd. N. Arlington, Va.* ("*North

Arlington Search*"), No. 17-cr-236, 2018 WL 534161, at *4, 2018 U.S. Dist. LEXIS 11874, at

*12 (E.D. Va. Jan. 23, 2018), *aff'd sub nom. United States v. Search of 2122 21st Rd. N.

Arlington, Va.*, 735 F. App'x 66 (4th Cir. 2018) (per curiam)).) Plaintiff argues that *North

Arlington Search* is inapposite because he alleges that Defendants disclosed "personal

information," not an "item," and *North Arlington Search* involved a search warrant, while

Plaintiff alleges the use of "electronic communications, stored communications, trap trace and

pen register warrants." (Dkt. No. 102, at 6.) Plaintiff further argues that "the records at issue[]

were not related to Law Enforcement activity" and were "not only out of the limited scope of

the[] warrants, but w[ere] not relevant to nature of the investigation." (*Id.*)

"The Privacy Act 'regulates the collection, maintenance, use, and dissemination of

information concerning individuals.'" *Carton v. Reno*, 310 F.3d 108, 111 (2d Cir. 2002) (quoting

---

[7] Because the Court finds that Plaintiff failed to satisfy the jurisdictional requirements of the FTCA, the Court lacks jurisdiction to consider the merits of Plaintiff's FTCA claims, and the Court therefore does not address Defendants' arguments based on the merits of these claims.

*Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001)). Under the Privacy Act, subject to certain exceptions, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). The Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552(a)(5). The Privacy Act allows an individual to bring a civil action against an agency when the agency "fails to comply with [a] provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on [the] individual." *See id.* § 552(g)(1)(D).

Thus, to prevail on a claim for wrongful disclosure under the Privacy Act, "a plaintiff must show that: 1) the information at issue is a record contained within a system of records; 2) the agency violated the Act with respect to that record; 3) the disclosure had an adverse effect on the plaintiff; and 4) the violation was willful and intentional." *Cross v. Potter*, No. 09-cv-1293, 2013 WL 1149525, at *10, 2013 U.S. Dist. LEXIS 37504, at *29 (N.D.N.Y. Mar. 19, 2013) (quoting *Tarullo v. Def. Cont. Audit Agency*, 600 F. Supp. 2d 352, 358 (D. Conn. 2009)). The "adverse effect" on the plaintiff must be "actual damages," *see* 5 U.S.C. § 552a(g)(4)(A), which are "limited to proven pecuniary or economic harm," *F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012).

Here, Plaintiff alleges that, during the execution of authorized warrants for "electronic communication"; "[s]tored communications"; "location"; "GPS"; "financial"; "pen register"; "trap trace"; and "search," "the defendants reviewed, obtained, compiled, and searched[]

multiple electronic communications, stored communications, other private communications, financial information, location information, photographs, videos, personal and private information, and other records which involved the plaintiff," including records with "individual identifier[s] such as[] case numbers unique to the plaintiff, the name Jonathan Cuney, Jonathan M. Cuney, Secret Squirrel, Secret Squirrel - Redux, and others." (Dkt. No. 52, ¶¶ 6–7, 10, 68.)

As an initial matter, it is not clear that the Privacy Act applies to records obtained pursuant to authorized warrants. *North Arlington Search* is illustrative. In that case, the plaintiff alleged that federal agents leaked documents obtained after the execution of search warrants at the plaintiff's home and office. *See* 2018 WL 534161, at \*1, 2018 U.S. Dist. LEXIS 11874, at \*2–3. The plaintiff subsequently brought a wrongful disclosure action under the Privacy Act. *Id.*, 2018 WL 534161, at \*4, 2018 U.S. Dist. LEXIS 11874, at \*9. The court, in analyzing the plaintiff's Privacy Act claim, noted that it was "unable to find any prior case in which the disclosure of an item seized during the execution of a search warrant was found to constitute a violation of the Privacy Act." *Id.*, 2018 WL 534161, at \*4, 2018 U.S. Dist. LEXIS 11874, at \*12.[8] Indeed, "applying the requirements of the Privacy Act to evidence sought by a search warrant" could "lead to illogical results" because the Privacy Act, which "requires an agency that maintains a system of records to 'upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof'" could then "require government

---

[8] This Court is similarly unable to find any such case, and the cases cited by Plaintiff in response to Defendants' motion to dismiss, (Dkt. No. 102, at 6), provide no support because neither involved records or information obtained pursuant to an authorized warrant. *See Maydak v. United States*, 363 F.3d 512, 516 (D.C. Cir. 2004) (discussing a Privacy Act claim under § 552a(e)(7) with respect to "photographs of prisoners visiting with family, friends, and associates [in] the exercise of associational rights protected by the First Amendment"); *Reyes v. Supervisor of Drug Enf't Agency*, 834 F.2d 1093, 1094 (1st Cir. 1987) (discussing a Privacy Act claim under § 552a(b)(7) in the context of a written "investigative report" prepared by the DEA indicating that the plaintiff "was or is a member of" a terrorist group").

agencies . . . to permit the subject of a criminal investigation 'to gain access to his record or to any information pertaining to him which is contained in the system.'" *Id.* (quoting 5 U.S.C. § 552a(d).[9]

Even assuming that the Privacy Act does apply to records obtained as a result of the execution of authorized warrants, Plaintiff has not plausibly alleged that Defendants' conduct violated the Privacy Act.

First, Plaintiff has not alleged that the allegedly disclosed information, which was collected pursuant to the execution of authorized warrants, was contained within a system of records. Under the Privacy Act, "the term 'system of records' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). "It is only when [a] document becomes incorporated into a record-keeping system under the agency's control that the Act's prescriptions apply." *Bechhoefer v. U.S. Dep't of Just.*, 312 F.3d 563, 566 (2d Cir. 2002)

As to this requirement, the second amended complaint contains only conclusory assertions that the information at issue "was contained in a system of records." (Dkt. No. 52, ¶¶ 63, 65, 69.) But the Court need not accept the truth of such factually unsupported legal conclusions. *See Iqbal*, 556 U.S. at 678; *see also Mayor & City Council of Balt.*, 709 F.3d at 135 ("We give no effect at all to 'legal conclusions couched as factual allegations.'" (quoting *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007))). Moreover, while Plaintiff alleges that BATFE was in possession of "several records that refer to the plaintiff by

---

[9] The Court notes, however, that the Privacy Act does authorize agencies to promulgate rules exempting from certain provisions of the Privacy Act a system of records "maintained by an agency . . . which performs as its principal function any activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2).

unique identifying numbers, symbols, and by name" that "contain[ed] individual identifier's such as[] case numbers unique to the plaintiff, the name Jonathan Cuney, Jonathan M. Cuney, Secret Squirrel, Secret Squirrel - Redux, and others," Plaintiff does not allege that the information at issue was "within a system of records [and was] *keyed* to plaintiff" or was "*retrievable* under plaintiff's name." *See Bechhoefer*, 312 F.3d at 567 (emphases added) (first citing *Gowan v. U.S. Dep't of the Air Force*, 148 F.3d 1182, 1191 (10th Cir. 1998), and then citing *Hudson v. Reno*, 130 F.3d 1193, 1206 (6th Cir. 1997), *abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001)). That is, while Plaintiff alleges that the purported records at issue *contained* personally identifying information, Plaintiff does not allege that such information was "*retrieved* by [Plaintiff's name] or by some identifying number, symbol, or other identifying particular assigned to [Plaintiff]." *See* 5 U.S.C. § 552(a)(5). Thus, Plaintiff has not plausibly alleged that the information at issue was "contained within a system of records," as is required to state a claim for unlawful disclosure under the Privacy Act. *See Cross*, 2013 WL 1149525, at *10, 2013 U.S. Dist. LEXIS 37504, at *29 (quoting *Tarullo*, 600 F. Supp. 2d at 358).

Furthermore, Plaintiff does not plausibly allege "actual damages" because he does not sufficiently allege any "pecuniary or economic harm." *See Cooper*, 566 U.S. at 299. The second amended complaint contains allegations that "disclosures made by the defendant(s) directly caused the plaintiff financial loss, loss of esteem, other loss, and emotional distress." (Dkt. No. 52, ¶ 50; *see also id.* ¶ 70.) But Plaintiff's vague and conclusory assertions of pecuniary loss are insufficient to plausibly allege that any pecuniary loss "flow[ed] directly from" Defendants' purported violation of the Privacy Act. *See Conyers v. U.S. Dep't of Veterans Affs.*, No. 22-1590, 2023 WL 6380535, at *2, 2023 U.S. App. LEXIS 25973, at *4 (2d Cir. Oct. 2, 2023) (summary

order). And any emotional distress caused by Defendants' alleged violation of the Privacy Act, even if proven, is insufficient to sustain Plaintiff's claim. *See Cooper*, 566 U.S. at 304; *see also Conyers*, 2023 WL 6380535, at \*2, 2023 U.S. App. LEXIS 25973, at \*4 ("[R]ecovery for emotional distress is not authorized by the [Privacy Act]."); *Young v. Tryon*, No. 12-cv-6251, 2013 WL 1289498, at \*6, 2013 U.S. Dist. LEXIS 43763, at \*19 (W.D.N.Y. Mar. 27, 2013) (collecting cases), *report and recommendation adopted*, 2013 WL 2471543, 2013 U.S. Dist. LEXIS 80589 (W.D.N.Y. June 7, 2013).

Accordingly, Plaintiff's Privacy Act claim is dismissed.

### C.      Wiretap Act Claim

Defendants move to dismiss Plaintiff's Wiretap Act claim against Defendants Choi, Sherman, and Soukeras on the same grounds the Court dismissed Plaintiff's previous Wiretap Act claim against Defendant Choi. (Dkt. No. 89-1, at 17.) Specifically, Defendants argue that Plaintiff has added no new facts to his second amended complaint that would render the Court's prior decision inapplicable and that, "[a]t bottom, all that Plaintiff's Second Amended Complaint alleges is that Defendants searched communications stored on Plaintiff's electronic devices." (*Id.*) Plaintiff argues that "defendants provided no evidence that would indicate where the unlawfully disclosed information could have been ascertained from in the alternative, absent their electronic and stored communication warrants," that interception need not occur simultaneously to transmission, and that, in any event, the "content in question was intercepted by the defendants as it was transmitted." (Dkt. No. 102, at 7–8.)

The Wiretap Act imposes liability on any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication"; "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to

know that the information was obtained through the interception of a wire, oral, or electronic communication"; or "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication" 18 U.S.C. § 2511(1)(a), (c), (d). As discussed in the Court's prior decision, "intercept" in the Wiretap Act "means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). "The term 'intercept' is construed narrowly 'to require that the interception of an electronic communication be contemporaneous with the transmission of that communication.'" *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 446 (S.D.N.Y. 2019) (quoting *Tantaros v. Fox News Network LLC*, No. 17-cv-2958, 2018 WL 2731268, at *7, 2018 U.S. Dist. LEXIS 85102, at *16 (S.D.N.Y. May 18, 2018)); *see also Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 503 n.1 (2d Cir. 2005) (noting that the "*continued receipt* of e-mail messages" that are acquired as a computer receives them constitutes interception, unlike "the acquisition of *previously stored* electronic communication").[10]

In the second amended complaint, Plaintiff alleges that Defendants employed not just "search warrants," as alleged in the first amended complaint, but also warrants for "electronic communication"; "[s]tored communications"; "location"; "GPS"; "financial"; "pen register"; and "trap trace" that "involved the interception and viewing of electronic communications and stored

---

[10] While Plaintiff is correct that the Second Circuit has not settled the issue, *see Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 139 n.11 (E.D.N.Y. 2010), as the Court previously noted, every circuit court to consider the issue has found that interception must occur during transmission. *See Boudreau v. Lussier*, 901 F.3d 65, 78 (1st Cir. 2018); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3rd Cir. 2003); *Steve Jackson Games, Inc. v. Secret Serv.*, 36 F.3d 457, 461-62 (5th Cir. 1994); *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016); *Epstein v. Epstein*, 843 F.3d 1147, 1149 (7th Cir. 2016); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002); *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003). Thus, consistent with its prior decision, the Court finds that interception must be contemporaneous with transmission.

communications." (Dkt. No. 52, ¶¶ 6–7.) Yet nowhere in the second amended complaint does Plaintiff allege facts plausibly suggesting that Defendants actually *intercepted* any electronic communication contemporaneous with the transmission of that communication. *See Democratic Nat'l Comm.*, 392 F. Supp. 3d at 446. Indeed, Plaintiff makes only the repeated conclusory assertion that Defendants' investigation involved "interception" of communications. (Dkt. No. 52, ¶¶ 7, 72–73.) But such a "formulaic recitation of the elements of a cause of action," absent supporting factual allegations, "will not do." *See Twombly*, 550 U.S. at 555; *accord Mayor & City Council of Balt.*, 709 F.3d at 135.[11] Thus, Plaintiff has not plausibly stated a claim under the Wiretap Act.

Accordingly, Plaintiff's Wiretap Act claim is dismissed.

### D.      Stored Communications Act Claim

Defendants move to dismiss Plaintiff's SCA claim against Defendants Choi, Sherman, and Soukeras on the grounds that Plaintiff's SCA claim is untimely; Plaintiff merely recites provisions of the SCA without alleging plausible facts in support; Plaintiff does not allege that Defendants acted with a knowing or intentional state of mind; and good-faith reliance on the warrants serves as a complete defense to any SCA claim. (Dkt. No. 89-1, at 18–22.) Plaintiff argues that Defendants knowingly exceeded authorization to access Plaintiff's information in violation of the SCA and that his SCA claim is timely based on the time Plaintiff discovered the alleged violation. (Dkt. No. 102, at 9–10.)

Under the SCA, it is unlawful to "obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in [a facility through which an

---

[11] As in the first amended complaint, Plaintiff sometimes describes Defendants' actions as involving the "search" of electronic communications and information. (Dkt. No. 52, ¶¶ 10, 13, 15, 39.) But searches of communications stored on Plaintiff's electronic devices do not fall under the ambit of the Wiretap Act. *See Democratic Nat'l Comm.*, 392 F. Supp. 3d at 446; *Hall*, 396 F.3d at 503 n.1.

electronic communication service is provided]" by either "intentionally access[ing] without authorization a facility through which an electronic communication service is provided" or "intentionally exceed[ing] an authorization to access that facility." 18 U.S.C. § 2701(a). "Electronic storage" is defined by the SCA as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" as well as "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.* §§ 2510(17), 2711(1). An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* §§ 2510(15), 2711(1). "Facility" is not defined by the SCA, "but courts have concluded that '"facilities" under the SCA are network service providers, which include "telephone companies, internet or e-mail service providers, and bulletin board services."'" *Kornotzki v. Jawad*, No. 19-cv-6689, 2020 WL 2539073, at *3, 2020 U.S. Dist. LEXIS 88340, at *8 (S.D.N.Y. May 19, 2020) (quoting *Walker v. Coffey*, 956 F.3d 163, 168 (3d Cir. 2020)); *see also Garcia v. City of Laredo*, 702 F.3d 788, 792 (5th Cir. 2012). "Any person aggrieved by a violation of [the SCA] may bring a civil action against the person or entity that engaged in such violation," *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 230 (2d Cir. 2020) (citing 18 U.S.C. § 2707(a)), for "actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation," 18 U.S.C. § 2707(c).

Despite Defendants' argument to the contrary, it is not clear that Plaintiff's SCA claim is untimely. The SCA provides that "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation." 18 U.S.C. § 2707(f). But it is not clear when Plaintiff "first discovered or had a reasonable opportunity to discover the violation." *See Sewell v.*

*Bernardin*, 795 F.3d 337, 338 (2d Cir. 2015) (quoting 18 U.S.C. § 2707(f)). While the alleged

disclosures occurred between November 2019 and February 2020, (Dkt. No. 52, ¶¶ 19–26), the

second amended complaint does not include any factual detail as to when Plaintiff learned of the

purported violation.[12] And though Plaintiff states in his affidavit attached to the second amended

complaint that he learned of the "disclosure" to HT while he "was being transferred through

Oklahoma City, OK on the U.S. Marshall's [sic] Air Transport from the District of Arizona back

to the Northern District of New York," Plaintiff does not state when this occurred, when he

learned of other disclosures, or when he learned of the alleged SCA violation. (Dkt. No. 52, at

21.) Therefore, the Court cannot conclude that Plaintiff's SCA claim is untimely.

 Even so, as with Plaintiff's Privacy Act and Wiretap Act claims, the second amended

complaint contains only conclusory allegations that are insufficient to plausibly state a claim

under the SCA. Plaintiff must plausibly allege that Defendant's access—whether unauthorized or

in excess of authorization—to the communications at issue occurred when the communications

were "in electronic storage" in "a facility through which an electronic communication service is

provided." *See* 18 U.S.C. § 2701(a).[13]

 But here, Plaintiff has not alleged, beyond conclusory recitations of language from the

SCA, that the communications at issue were "in electronic storage" or were accessed in "a

facility through which an electronic communication service is provided" under the language of

the SCA. Plaintiff refers repeatedly to "stored communications" allegedly accessed by

Defendants, (Dkt. No. 52, ¶¶ 6–7, 10, 15, 94, 106), but Plaintiff does not allege where these

---

[12] All that can be gleaned from the second amended complaint is that Plaintiff learned of the purported violations sometime after his arrest in November 2019, (Dkt. No. 52, ¶ 5).

[13] Though not addressed by Defendants, the SCA, as with the Privacy Act, authorizes a civil action to remedy "actual damages." *See id.* § 2707(c). As discussed with respect to Plaintiff's Privacy Act claim, Plaintiff has not plausibly alleged any actual damages.

communications were stored when Defendants accessed them. Plaintiff states in his affidavit that the "majority" of the relevant communications "was transmitted from [Plaintiff's] cellular phone," "tablet," and "personal computer." (*Id.* at 21.) But these personal devices do not constitute "facilities" in which communications are in "electronic storage" under the SCA. *Cf. Kornotzki*, 2020 WL 2539073, at *3, 2020 U.S. Dist. LEXIS 88340, at *8 (collecting cases demonstrating that the SCA applies to access of communications stored on third-party servers). Moreover, Plaintiff does not allege that while the communications were on Plaintiff's personal devices, they were in "electronic storage." *See Yukos Cap.*, 977 F.3d at 232 ("[O]nce [communications] were downloaded onto . . . computers, they were not 'in electronic storage' within the meaning of the statute."). And while Plaintiff does allege that "[o]ther information was held on stored communications including online stored digital photographs; emails; online stored videos; online financial transactions, call logs, internet histories, data backup, etc.," these allegations are conclusory and nonspecific—once again, Plaintiff does not allege where such information was stored such that the Court can conclude that the strictures of the SCA apply.[14] Finally, though Plaintiff refers generally to "Verizon, YAHOO!, and others," (Dkt. No. 94; *see also id.* at 18), Plaintiff does not allege that Defendants' access to the relevant communications was through the servers of these network service providers but instead alleges that the communications were "transferred by electronic communication services, and stored in electronic communication storage facilities of and concerning the plaintiff from Verizon, YAHOO! and others," (*id.* ¶ 94 (emphasis added)).

---

[14] Plaintiff's allegation concerning "data backup" comes closest to meeting the requirements of the SCA, under which storage for the purposes of "backup protection" constitutes "electronic storage." *See* 18 U.S.C. §§ 2510(17), 2701(a), 2711(1). Nevertheless, Plaintiff fails to plausibly allege that Defendants accessed any such communication in "a facility through which an electronic communication service is provided." *See id.* § 2701(a); *see also Yukos Cap.*, 977 F.3d at 232.

Furthermore, the SCA requires that a defendant access the facility at issue "without authorization" or that a defendant "intentionally exceed[] an authorization to access that facility." *See* 18 U.S.C. § 2701(a). Here, Plaintiff alleges that Defendants did, in fact, have authorization pursuant to warrants for "electronic communication"; "[s]tored communications"; "location"; "GPS"; "financial"; "pen register"; "trap trace"; and "search" that "authorized [Defendants] to investigate alleged firearms trafficking offenses," (Dkt. No. 52, ¶¶ 6–7), but that Defendants "exceeded" such authorization, (*id.* ¶¶ 12, 89, 95, 107).

Despite Plaintiff's statement that he "had the opportunity to view many warrants and their affidavits," the second amended complaint is bereft of factual allegations demonstrating what specifically the warrants at issue authorized or how specifically Defendants exceeded that authorization. Plaintiff does allege that the "specific warrants were seeking evidence of specific offenses," which presumably were the "firearms trafficking offenses" Plaintiff refers to elsewhere in the second amended complaint. (*Id.* ¶¶ 7, 12, 107.) But the fact that the warrants were issued as part of an investigation into firearms trafficking offenses does not demonstrate what, specifically, the warrants authorized Defendants to do, and therefore, Plaintiff fails to plausibly allege in the second amended complaint that Defendants exceeded the authorization.

Accordingly, Plaintiff's SCA claim is dismissed.[15]

---

[15] Defendants also argue that their good-faith reliance on the warrants at issue provides a basis on which to dismiss Plaintiff's SCA claim. (Dkt. No. 89-1, at 22.) Under the SCA, "[a] good faith reliance on . . . a court warrant . . . is a complete defense to any civil . . . action brought under this chapter." 18 U.S.C. § 2707(e)(1). But the burden of proving an affirmative defense is on the defendant. *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 195 (2d Cir. 2021). Given that the Court's consideration at this stage is limited to facts as alleged in the second amended complaint, and given that Defendants point to no facts alleged in the second amended complaint that support their argument, the Court finds that Defendants have not met their burden of establishing good-faith reliance on the warrants.

23

## V.      LEAVE TO AMEND

Plaintiff requests leave to amend. (Dkt. No. 102, at 2.) Defendants argue that leave to amend should be denied as futile and because Plaintiff has already had multiple opportunities to amend. (Dkt. No. 89-1, at 22–23; Dkt. No. 106, at 12.)

A party may amend its pleading "once as a matter of course within . . . 21 days after serving it, or . . . 21 days after service of [a responsive pleading or a motion under Rule 12(b)]." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend under Rule 15(a) "shall be freely given when justice so requires." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)). For pro se plaintiffs, a "complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). However, "leave to amend may be denied if . . . amendment would be futile." *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)). Proposed amendments are futile if they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir. 1991)). This rule applies even to pro se plaintiffs. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, Plaintiff amended once as of right under Rule 15(a)(1) with the benefit of Defendant Choi's arguments for dismissal from Defendant Choi's first motion to dismiss. (Dkt. No. 31.) Defendant Choi subsequently filed another motion to dismiss, which the Court granted. *See Cuney*, 2022 WL 16743984, at *6, 2022 U.S. Dist. LEXIS 201968, at *15. Plaintiff, with the

Court's leave, then filed the second amended complaint, this time with the benefit of both Defendant Choi's arguments for dismissal and the Court's guidance in dismissing Plaintiff's claims. Thus, Plaintiff "was afforded a fair and reasonable opportunity to amend his complaint . . . to set forth cognizable claims." *See Baptiste v. Doe*, No. 23-cv-665, 2023 WL 4304748, at *5, 2023 U.S. Dist. LEXIS 112952, at *12 (N.D.N.Y. June 30, 2023). The second amended complaint represents Plaintiff's third attempt to do so.[16] Denial of Plaintiff's request for leave to amend is therefore warranted because Plaintiff's repeated pleading deficiencies render further amendment futile. *See id.* Accordingly, Plaintiff's request for leave to amend is denied.

## VI.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss, (Dkt. No. 89), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims under the Federal Tort Claim Act (Counts 1–3) in the second amended complaint, (Dkt. No. 52), are **DISMISSED without prejudice**; and it is further

**ORDERED** that the second amended complaint, (Dkt. No. 52), is otherwise **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's request for leave to amend, (Dkt. No. 102, at 9), is **DENIED**; and it is further

---

[16] Nor has Plaintiff identified any basis for another amendment. Plaintiff suggests that an amendment could "re-include a *Biven's* claim," (Dkt. No. 102, at 10), but the Court has already determined that Plaintiff has no plausible *Bivens* claim, *see Cuney*, 2022 WL 16743984, at *3–5, 2022 U.S. Dist. LEXIS 201968, at *7–12. And though Plaintiff argues that equitable tolling would be warranted to toll statutes of limitations, he has not provided any basis to believe that he could allege facts that would support viable causes of action.

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules and close this case.

**IT IS SO ORDERED.**

Dated: <u>March 26, 2024</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge